RIO GRANDE & E. P. RY. CO. v. TEXAS-MEXICAN RAILWAY CO.   (No. 5370.)†

(Court of Civil Appeals of Texas. San Antonio. Jan. 20, 1915. Rehearing Denied Feb. 17, 1915.)

1. CARRIERS ⟐26—CONTROL AND REGULATION—THROUGH RATES—INTERSTATE COMMERCE COMMISSION.

The rulings of the Interstate Commerce Commission permit a railroad to take advantage of through rates in hauling its own property, but require that the carriage be in good faith, with intention to use the property at the point where the transit ends.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 67–82; Dec. Dig. ⟐26.]

2. CARRIERS ⟐26—CONTROL AND REGULATION—RATES.

In intrastate commerce, a railroad may not have the benefit of through rates on its own line in the carriage of its own property apart from the contract.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 67–82; Dec. Dig. ⟐26.]

3. CARRIERS ⟐29—CONNECTING CARRIERS—DIVISION OF RECEIPTS.

Plaintiff and defendant were connecting railroads. Defendant loaded coal for plaintiff's use at mines at Minera billed through to Pescadito and hauled it 26 miles to Laredo, whence plaintiff took it to be hauled 18 miles to Pescadito, on its line, but actually used much of it at Laredo, either stopping the coal there or hauling it to Pescadito and back. In October, 1912, defendant railroad began to require the mining company at Minera, which acted as agent for the plaintiff road, to prepay the 80-cent through rate on coal from Minera to Pescadito. Thereafter, on complaint of the plaintiff road, the State Railroad Commission ordered a division of the through rate

receipts from the traffic in the ratio of 65 cents to the defendant and 55 cents for plaintiff, the local rates of the two companies from Laredo. *Held* that, in a suit to recover from defendant road the amount due on past transactions under such ruling, it having been retaining out of the 80-cent rate its full local rate, to Laredo, plaintiff could not recover for carriage of coal hauled by it to Pescadito and then back to Laredo; such transactions not calling for division of the receipts under the Commission's ruling, nor for switching charges on cars stopped by it at Laredo.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 80; Dec. Dig. ⟐29.]

Appeal from District Court, Webb County; J. F. Mullally, Judge.

Action by the Texas-Mexican Railway Company against the Rio Grande & Eagle Pass Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

A. Winslow, of Laredo, for appellant. Greer & Hamilton, of Laredo, for appellee.

CARL, J. Appellee, Texas-Mexican Railway Company, and appellant, Rio Grande & Eagle Pass Railway Company, are connecting railways at Laredo. Appellee's line extends from Laredo east to Corpus Christi, about 160 miles distant; and appellant's line of road extends from Laredo up the river northwest, about 26 miles to Minera, a point where the Santo Tomas Coal Company operates coal miles. From this coal company the appellee buys its coal for its shops and engines, and ships same over the appellant railway to Laredo, where same is delivered to appellee's road. The siding, called Pescadito, is about 18 miles east of Laredo, on appellee's line. At that place there is no station agent or office, no coal bins, and, in fact, nothing but a section house and a switch with a capacity to hold about 33 cars. From Minera to Pescadito the Railway Commission of Texas had fixed a through rate of 80 cents per ton on coal, which was apportioned to the parties herein according to their respective local rates of 65 cents per ton for appellant and 55 cents per ton for appellee.

The railways had differed as to the freight charges on shipments made from Minera to Pescadito, appellee contending that it was entitled to a division of the 80 cents through charges, while appellant claimed that, since the coal was at home when it reached appellee's line at Laredo, it was entitled to charge its local rate of 65 cents per ton, and that the mere fact that the coal was billed through to Pescadito did not entitle appellee to a division for hauling its own coal. It was further contended that nearly all of the shipments billed to Pescadito from Minera were, in fact, stopped at Laredo, and were never intended to be taken to Pescadito, and that those which were hauled to that point were brought back to Laredo. So about Oc-

─────────────────────

⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

† Writ of error pending in Supreme Court.

tober 29, 1912, appellant railway began requiring the Santo Tomas Coal Company, which was acting as agent for the Texas-Mexican Railway in the shipment of its coal to Pescadito, to prepay the 80 cents through rate charges between the two points, and continued thereafter so to require freight charges to be paid in advance.

The petition alleges that the total tonnage for the 17 months beginning October 29, 1912, and ending March 1, 1914, was 18,286.22, on which appellee paid the gross sum of $14,616.60, at the rate of 80 cents per ton.

By its order of date February 24, 1914, the Railway Commission of Texas divided the 80 cents per ton theretofore existing on the basis of the local rates aforesaid of 65 cents and 55 cents per ton, which resulted in 43.3 cents to appellant and 36.7 cents to appellee.

Appellee brought suit on three counts for damages: ·

(1) It prayed for the 36.7 cents part of the 80 cents through rate, amounting to $6,400.11.

(2) It prayed for 36.7 cents per ton on all coal actually hauled to Pescadito, and $2.50 per car switching charges on those cars stopped at Laredo, as well as for 15 cents per ton of the prepaid freight on cars so stopped at Laredo. Under this count the amount claimed was $5,220.58. This is the count upon which the court rendered judgment. Special exceptions were sustained to the first and third counts, the latter of which charged unlawful discriminations, etc., and sought to recover penalties.

Appellant admitted that it owed appellee $2,281.99 upon cars of coal billed to Pescadito, and on which it had collected 80 cents per ton through rate from Minera, and says it offered to pay that amount before the suit was filed, but appellee demanded 40 cents per ton or an equal division. It is also charged that said billings to Pescadito were fraudulently made by appellee for the purpose of getting 25 cents per ton more than it was entitled to receive; and, in substance, that the billing to Pescadito was a mere subterfuge to avoid appellant's local rate on coal from Minera to Laredo which is 65 cents per ton. It was also pleaded that appellee was not entitled to a prorate for hauling its own coal on its own road; that it was not entitled to switching charges for handling its own coal on its own switches; and that appellant was entitled to charge its local rate of 65 cents from Minera to Laredo.

The 21 assignments of error, when brought to the last analysis, may be discussed under three propositions, viz.: (1) That no railway company is entitled to a revenue pro rata for hauling its own coal on its own line of railway; (2) that no railway company is entitled to charge for switching its own coal on its own switches; (3) that the court erred in refusing to permit appellant to show the construction placed by the Railway Commission on its order No. 1427, and that such construction is the only reasonable construction to be placed thereon.

Some of the cars of coal were carried through to Pescadito, and some were stopped at Laredo without advising appellant thereof, nor was any offer made to change the billing. By billing coal to Pescadito from Minera, appellee gets a larger division of revenue prorate than it would by billing to any other point on its line. There were 271 cars, with a total tonnage of 10,146.392, and with freight charges of $8,080.37, hauled through to Pescadito, and 211 cars, with 8,157.81 tons, and $6,526.23 in freight charges, that were stopped off at Laredo, and never carried to Pescadito, although billed to that place.

The coal stopped at Laredo was used in coaling engines to go on appellee's line, and in coaling its switch engines, and at the roundhouse and shops in Laredo owned by the National Railways of Mexico, where the engines in use by appellee were housed and repaired. Out of a shipment to Pescadito in September, 1913, one car containing 264 tons was stopped at Laredo, and there delivered to the National Railways of Mexico, at its request, and 2 cars out of 42 contained in the February, 1914, billing to Pescadito were returned from that point to Laredo and sold to the National Railways of Mexico. A large per cent. of the other cars actually sent to Pescadito were returned to Laredo and there used by appellee. Pescadito was used by appellee as a distributing point, and it had coal bins at Corpus Christi, Robstown, Alice, and Hebbronville. The only coal parceled out at Pescadito was what an occasional engine on appellee's line would take if it happened to need it to get to a coaling station. Appellee had an arrangement with the National Railways of Mexico at Laredo whereby the latter company paid 85 per cent. of the cost of switching service; the items of that expense being coal, lubricating oil, and grease, as well as the wages of switchmen. The items so charged, and including the 3 cars of coal and 216.85 tons of coal used in operating the shops, amounts to $12,525.36.

Appellant has paid appellee no part of the 80 cents per ton collected on said shipments, but has indicated a willingness, before the suit was filed, and since, to pay 15 cents per ton; and has paid no switching charges on said cars of coal.

The Railway Commission had fixed $2 as the switching charge allowable at Laredo, because it was more than one, and less than two, miles. This was a general order applying to all places where interchanges of freight between roads were made, where made in car load lots.

As before stated, these railways had been disagreeing about the proper division of rates between Minera and Pescadito, and that culminated in the matter being taken before the Railroad Commission of Texas as to 8 cars of coal not involved in this suit. The

Texas-Mexican Railway addressed the following communication to the Commission:

"177.

"July 28, 1913.

"To the Honorable Railroad Commission of the State of Texas, Austin, Texas—Dear Sirs:

"The Texas-Mexican Railway Company, complaining of the Rio Grande & Eagle Pass Railway Company, respectfully submits the matters hereinafter set forth constituting a disagreement between said companies and requests that the same be placed upon your docket for hearing at your earliest convenience.

"The through rate upon shipments of coal from Minera, Texas, a point upon the Rio Grande & Eagle Pass Railway, to Pescadito, Texas, a point upon the Texas-Mexican Railway, is eighty (80) cents. That the 'common division' of this amount upon through shipments of coal between Minera, Texas, and Pescadito, Texas, would be forty (40) cents to each road. That the following shipment as hereafter set forth in detail and as more fully appears by the copies of bills of lading attached hereto and also copies of billing covering the shipments from Laredo to Pescadito, and which are made a part of this application and marked Exhibit A, were shipped on through bills of lading from Minera, Texas, to Pescadito, Texas: [Here follows markings, dates, and billings of eight cars of coal from Minera to Pescadito.]

"Which said shipments of coal as above set forth were afterwards distributed by the Texas-Mexican Railway Company as fully appears in the following statement, and as shown by copies of billing covering hereto attached and marked Exhibit B: * * *

"That the said Rio Grande & Eagle Pass Railway Company required the shippers to prepay the freight upon said shipments and upon a division of the rates between the two companies arbitrarily retained as their proportion thereof sixty-five (65) cents per ton, which is their special rate on coal from Minera, Texas, to Laredo, Texas, and which is ten (10) cents higher than the regular rate, leaving and allowing the Texas-Mexican Railway Company fifteen (15) cents per ton upon their haul from Laredo to Pescadito. This company has specifically requested the Rio Grande & Eagle Pass Railway Company to allow it its just proportion of the through rate upon said coal, which proportion would be forty (40) cents per ton. The Rio Grande & Eagle Pass Railway Company has declined to allow the Texas-Mexican Railway Company this proportion of the through rate, and intimates that it purposes in the future to continue to collect and retain upon all shipments of coal make between Minera, Texas, and Pescadito, Texas, the sum of sixty-five (65) cents per ton, and only allow the Texas-Mexican Railway Company fifteen (15) cents per ton upon such through shipments.

"The Texas-Mexican Railway Company desires a ruling from your honorable body whether it is entitled to a division of the through rate upon company coal shipped from Minera, Texas, and which coal actually moves to Pescadito, Texas, and we would be pleased to have this ruling cover all shipments of company coal moving from Minera, Texas, to Pescadito, Texas.

"Very truly yours,

"C. M. Fish, G. F. A."

A hearing was had, and the Railroad Commission made its order as follows:

"Austin, Texas, February 24, 1914.

"Hearing No. 1427.

"Division, Coal, Car Loads from R. G. & E. P. Points to Texas-Mexican Ry. Points.

"The above numbered and entitled cause having been called for hearing by the Commission at its October term, 1913, upon notice duly given therein under date of July 31, 1913, the same being a disagreement between the interested carriers as to the division of the through revenues accruing for the transportation of the shipments covered by the said notice herein, and the Commission having heard the arguments and statements presented by the parties interested, and having duly considered the same:

"It is now hereby ordered by the Railroad Commission of Texas that the revenue accruing under the freight rates applicable for the transportation of the shipments in question, the same being car load shipments of soft coal from Minera, Texas, to Pescadito, Texas, shall be divided between the carriers participating in the haul thereof, in proportion to the local rates of said companies actually moved; the local rates to be used as factors being as follows:

"For the Rio Grande & Eagle Pass Railway Company, sixty-five (65) cents per ton.

"For the Texas Mexican Railway Company, fifty-five (55) cents per ton.

"[Signed]   William D. Williams,

"Earle B. Mayfield,

"Commissioners.

"Attest:

"E. R. McLean, Secretary."

[1] It will be noted by an inspection of the complaint and order thereon that there is nothing therein to indicate that same applies to anything but commercial shipments. The right to charge for hauling its own coal and of fraudulent billing for the purpose of working a discrimination seems not to have been at issue there. If those questions were before the commission, that body did not pass on them, but, instead, made a division of the through rate charge of 80 cents per ton, which applied to all the coal shipments between said points. Some of those eight cars went to Robstown, Corpus Christi, and Alice. The rate between Minera and Pescadito on commercial shipments is not before us, for no complaint is made as to that. Appellee went into court and sued appellant for what it claimed was its part of the through rate on coal that admittedly belonged to appellee, and when that suit was brought appellant certainly had the right to make its defense. If it were any part of the Railroad Commission's duty to collect freights wrongfully withheld, then, of course, it would have been the duty of appellee to have gone to that body for relief; and if, in adjusting and fixing rates so as to prevent discrimination, etc., it should appear by "clear and satisfactory evidence" that an injustice were done, resort might be had to the courts as against the Commission. The venue in that case would be at Austin, and the purpose of such a suit would be widely different from the case at bar. Here the charge is made that appellant has withheld the proportion of freight due appellee under the rule fixed by the Commission, and appellant defends by saying that: "You are defrauding us, and have no right to a prorate under that rule." The same Commission that fixed the through rate from Minera to Pescadito likewise fixed appellant's local rate of 65 cents from Min-

era to Laredo. No attack is made on either rate, that it is unreasonable, but here the point is that the through rate does not apply, because the appellee was hauling its own property, and that property was "at home" when it reached appellee's line at Laredo. The rulings of the Interstate Commerce Commission seem to be to the effect that a railway may take advantage of a through rate in hauling its own property, but even there, as we gather, it must be done in good faith. In other words, that road must in good faith intend to use the property at the point to which the rate applies. Then all that part of the through rate accruing on its own line is merely "absorbed"; that is, no account is taken of same in the earnings of the road.

If we apply that rule, then appellee is not entitled to its prorate on the shipments in question, because it is manifest and practically admitted that it did not intend to use the coal at Pescadito. There was no place to use it. It was either stopped in Laredo or taken to Pescadito and then brought back to Laredo, for the manifest purpose of getting 25 cents per ton that rightfully belonged to appellant road.

[2] If a railway should be permitted to take advantage of through rates when the commodity is its own property and hauled partially over its own line, and then absorb the proportionate part of the freight on its own line, that would, it seems to us, be a discrimination in favor of the railroad, because it does not have to account for that freight in its earnings. But, however that may be, it is the holding of this court that, on intrastate business, a railway may not have the benefit of through rates on its own line, and on its own property, in the absence of contract.

[3] It is contended by appellee that, if it is not entitled to the benefit of the through rate on the coal which was not taken to Laredo, it would be entitled to the $2 switching charge on each of the 211 cars stopped there. This coal belonged to appellee, and appellant's duty was to deliver that coal to appellee at Laredo. This it did. Then why should the Rio Grande & Eagle Pass Railway be concerned about what the Texas-Mexican Railway did with it after it came in possession of the coal? Its duty was to haul the the coal to Laredo, and, when it delivered the coal to appellee, it was totally immaterial what that railway did with it. Its contract was not to deliver it to the International & Great Northern Railway Company shops nor to the National Railways of Mexico. When a farmer buys a load of corn to be delivered at San Antonio, for instance, he must go to the car on the tracks and get it, unless he desires to pay for switching it to a more suitable place than the regular and customary place of delivery. The Texas-Mexican Railway pretended that it wanted this coal

at Pescadito, in which event the switching charges would not obtain. But it turns out that it wanted it at Laredo. Appellee forgets, however, that appellant made no agreement to deliver this coal at any of the points where switching was necessary. When appellant pulled the coal to appellee's line at Laredo, there is no reason, either in law or good conscience why it should, in the absence of agreement to deliver to a certain point, be required to pay for hauling the coal over any part of appellee's line. If the coal had been sold to a private dealer, he would have come to appellant's tracks and got it, unless he had made a contract to have it delivered over at the National Railways of Mexico. The Railroad Commission has fixed a switching rate where the switching is necessary to be done; but that does not mean that every car shipped into Laredo has to pay a $2 switching charge. When that coal reached the tracks of appellee, it was delivered, in the absence of an agreement to deliver it elsewhere; and it did not matter if the appellee hauled it to Corpus Christi. That is a matter of no concern to appellant.

Since the evidence shows conclusively that appellee was not entitled to anything for what it hauled to Pescadito and returned to Laredo, and since we have held that it was not entitled to switching charges on 211 cars stopped at Laredo, we shall reverse the judgment of the trial court, and here render judgment that appellee recover the 15 cents per ton on prepaid freight on 18,304.2 tons, aggregating $2,745.63, and otherwise that it recover nothing except the costs of the lower court which are adjudged against appellant because it does not appear that a tender of the amount due was made before suit was filed. A willingness to pay the 15 cents had been expressed, but that was all.

Assignments Nos. 13, 14, 15, 16, 18, and 20 are sustained, and this makes it unnecessary to pass upon the other assignments.

Reversed and rendered.